# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| ANDERSON CAR & TRACTOR CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 01-5059-CV-SW-RED |
| | ) | |
| JOHN DEERE COMPANY, a Division of | ) | |
| Deere & Company, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Now before the Court is Defendant's Renewed Motion for Judgment as a Matter of Law

Pursuant to 50(b), or, in the Alternative, Motion for Remittitur and Motion for new Trial, Pursuant

to Rule 59 (Doc. 163). Plaintiff originally filed its four-count Petition in state court, seeking

damages for wrongful termination of a farm equipment dealer franchise agreement pursuant to

Missouri Revised Statute section 407.848; breach of contract, unfair marketing practices, and

obligation of good faith and fair dealing, defamation, and included a claim for punitive damages.

Defendant removed the case to this Court. Defendant filed a Motion for Summary Judgment,

arguing, inter alia, that the contract between the parties barred any damages for future lost profits

and that nonetheless any claim for lost profits was too speculative under Missouri law. The Court

denied the Motion with respect to lost profits damages, finding that the contractual provision was

void as against Missouri public policy and that the evidence of damages was not too speculative as

a matter of law. The Court did enter judgment in favor of Defendant on Count III, defamation, as

Plaintiff advised that it abandoned the claim. The case then went to jury trial. At the close of

Plaintiff's evidence, Defendant filed a Motion for Judgment as a Matter of Law, pursuant to Federal

Rule of Civil Procedure 50(a), arguing thirteen separate points. The Court granted the Motion in

part, withdrawing punitive damages from the jury's consideration and granting judgment in favor of Defendant on a claim that Defendant breached the separate Lawn and Garden Dealer Agreement, but denied the Motion as to the remaining eleven arguments asserted. At the close of all the evidence, Defendant renewed its Motion for Judgment as a Matter of Law, reasserting nine of the previously denied eleven arguments.[1] The Court denied the Motion in its entirety. The jury returned a verdict in favor of Plaintiff on its claim of wrongful termination/breach of the Commercial Products Dealer Agreement, finding Plaintiff's damages to be $1,400,000.

In the Motion and accompanying Suggestions, Defendant argues that it is entitled to

---

[1]     The two arguments not reasserted in the second motion were "Plaintiff is not entitled to damages for the reason that both the Commercial Products Dealer Agreement and the Lawn and Garden Dealer Agreement contain a waiver of any and all damages" and "Plaintiff failed to present evidence of its alleged lost profits under the Commercial Products Dealer Agreement." Defendant did argue in the motion at the close of all the evidence that Plaintiff did not prove lost profits because it presented no profit history, that the evidence of lost profits consisted of improper speculation, that the evidence of lost profits failed to include the fixed and variable costs, and that the lost profit evidence consisted solely of gross profits, not net profits.

Generally, "judgment as a matter of law following a jury verdict cannot be had by a party who fails to renew its motion, pursuant to Rule 50(b) at the close of all the evidence." *Mathieu v. Gopher News Co.*, 273 F.3d 769, 776 (8th Cir. 2005). Additionally, a "movant cannot use a Rule 50(b) motion as a vehicle to introduce a legal theory not distinctly articulated in its close-of-evidence motion for directed verdict." *Conseco Fin. Servicing Corp. v. N. Am. Mortgage Co.*, 381 F.3d 811, 821 (8th Cir. 2004) (citations and quotations omitted). However, such issues are appropriately raised in a post-verdict motion "if the district court and the nonmoving party are apprised of the basis for the motion. [Then,] [t]echnical precision in stating the grounds for the motion is not necessary." *Okruhlik v. Univ. of Ark.*, 395 F.3d 872, 878 n.5 (8th Cir. 2005) (citations omitted). Although Defendant may not have articulated a general theory arguing the impropriety of lost profit damages in its Rule 50(a) motion at the close of all the evidence, it did state more specific theories to deny lost profits damages in the Motion. And, even though Defendant did not rearticulate the contractual waiver argument in the close-of-evidence motion, it had previously stated the argument in a summary judgment motion and in a motion for judgment as a matter of law at the close of Plaintiff's evidence. The Court and nonmoving party were apprised of the basis for this Motion, and the Court will consider it. At any rate, for the reasons described in Section I.B., *infra*, Defendant is not entitled to judgment as a matter of law on either of those two arguments.

2

Judgment as a Matter of Law on the claims because (1) there was insufficient evidence to allow the jury to consider or to award lost profit damages, (2) the Commercial Products Dealer Agreement contains a waiver of damages, and (3) Plaintiff failed to prove that it was a farm equipment dealer. Defendant next argues that it is entitled to a remittitur. Finally, Defendant argues in the alternative that it is entitled to a new trial, articulating ten different grounds, which include arguments that two jury instructions were improper and that the Court erred in admitting some of Plaintiff's evidence and excluding some of Defendant's evidence. Plaintiff has responded, arguing that none of Defendant's requested relief is appropriate. For the reasons below, the Court holds that Defendant is not entitled to judgment as a matter of law or entitled to a new trial, but that remittitur is appropriate. Therefore, Defendant's Motion will be **GRANTED IN PART AND DENIED IN PART**.

## I. Motion for Judgment as a Matter of Law

### A. Standard of Review

First, Defendant argues that it is entitled to judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b). A Rule 50(b) motion allows a party to renew a Motion for Judgment as a Matter of Law made at the close of evidence. *See* Fed. R. Civ. P. 50(b). Such a motion will be granted if there "is not legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue" and a claim or defense "cannot under the controlling law be maintained or defeated without a favorable finding on that issue." Fed. R. Civ. P. 50(a). In reviewing the motion, the Court should draw all reasonable inferences in favor of the nonmoving party, refuse to make credibility determinations or weigh the evidence, and refuse to grant the motion when reasonable jurors could differ as to the conclusions that could be drawn from the evidence. *Walsh v. Nat'l Computer Sys.*

*Inc.*, 332 F.3d 1150, 1158 (8th Cir. 2003) (quotations and citations omitted). The Court reviews the record as a whole but "should disregard all evidence favorable to the moving party that the jury is not required to believe." *Everest Capital Ltd. v. Everest Funds Mgt. L.L.C.*, 393 F.3d 755, 760 (8th Cir. 2005) (citations and quotations omitted). In other words, judgment as a matter of law is appropriate only when "all of the evidence points one way and is susceptible of no reasonable inference sustaining [the nonmoving party's] position." *Children's Broadcasting Corp. v. Walt Disney Co.*, 357 F.3d 860, 863 (8th Cir. 2004) (further quotations and citations omitted).

Additionally, a party may also file a motion for judgment as a matter of law on a purely legal ground, notwithstanding the weight of the evidence. *See* Fed. R. Civ. P. 50(b); *K & T Enters., Inc. v. Zurich Ins. Co.*, 97 F.3d 171, 175 (6th Cir.1996).

### B. Analysis of Defendant's Arguments

#### 1. Sufficiency of Plaintiff's Evidence on Lost Profits

First and foremost, Defendant argues that it is entitled to judgment as a matter of law because, Defendant argues, Plaintiff's evidence of lost profits was speculative, because Plaintiff presented no evidence of a profit history, and because Plaintiff's evidence failed to include fixed and variable costs establishing anticipated net profits.

Under Missouri law, "[t]o obtain a damage award for lost profits, a plaintiff must produce evidence which provides an adequate basis for estimating the lost profits with reasonable certainty." *Meridian Enters. Corp. v. KCBS Inc.*, 910 S.W.2d 329, 331 (Mo. Ct. App. 1995) (citing *Manor Square Inc. v. Heartthrob of Kansas City, Inc.*, 854 S.W.2d 38, 244 (Mo. Ct. App. 1993)); *accord Wash Solutions, Inc. v. PDQ Mfg. Inc.*, 395 F.3d 888, 892-93 (8th Cir. 2005). A plaintiff need not show the amount of lost profits with "exact certainty," but must present "actual facts which present

4

Case 3:01-cv-05059-RCB Document 175 Filed 09/25/2005 Page 4 of 20

a basis for a rational estimate of damages without resorting to speculation." *Meridian Enters.*, 910 S.W.2d at 311 (citing *Manor Square*, 854 S.W.2d at 244 and *Ibarra v. Mo. Poster & Sign Co.*, 838 S.W.2d 35, 39 (Mo. Ct. App. 1992)).

Generally, the costs and expenses of operation must be included as an item in the proof of damages. *See Meridian Enters.*, 910 S.W.2d at 332 (citing *Coonis v. Rogers*, 429 S.W.2d 709, 714 (Mo. 1968)).  When the product is an "add-on" to the business, general operating expenses need not be taken into account. *See High Life Sales Co. v. Brown-Forman Corp.*, 823 S.W.2d 493, 502-05 (Mo. 1992) (en banc).  Additionally, although "overhead expenses tied to the production of income" are deducted from any future lost profit estimation, fixed expenses, which are "the continuous expenses of the business that are incurred regardless of the loss of a portion of the business," including "rent, taxes, and administrative salaries" are not deducted from future lost profits. *Ameristar Jet Charter, Inc. v. Dodson Int'l Parts Inc.*, 155 S.W.3d 50, 55-57 (Mo. 2005) (en banc).[2]

Here, Plaintiff's primary witness for lost profits was Vice President and bookkeeper, Patricia Anderson.  She testified that Deere sales increased from 1997 to 1998.  She further testified that there were few variable costs associated with Deere sales.  She stated that costs for the business's building, insurance rates, and number of employees remained constant.  Any other variable costs, such as unreimbursed advertising costs or employees' time spent training or complying with John Deere requirements, were negligible.  Defendant had an opportunity to cross-examine Ms. Anderson on her testimony, and the jury clearly found her testimony credible.  The Court finds that Plaintiff

---

[2]    *Ameristar* was a tort case, and the Missouri Supreme Court articulated its holding "in tort cases." *See Ameristar*, 155 S.W.3d at 56. However, there is no logical reason to distinguish that case from this case—a statutory breach of contract case. The Court has previously held that *Ameristar* applies, and it sees no reason to reverse its previous ruling.

did provide sufficient evidence of future lost profits and had no variable expenses to deduct from the profits proved by Plaintiff as defined by *Ameristar Jet Charter*. However, the size of the jury's award is not compatible with the evidence of profits presented by Plaintiff. Such disparity, however, does not require judgment in favor of Defendant; rather, remittitur is appropriate. Such issue will be addressed, *infra*.

## 2. Contractual Damages Waiver

Next Defendant argues that the Dealer Agreement bars Plaintiff from recovering damages for Deere's termination of the agreement. A paragraph in the agreement states that "[n]either party is entitled to any compensation or reimbursement for loss of prospective profits, anticipated sales or other losses occasioned by cancellation or termination." However, as this Court noted in its Order on Defendant's Motion for Summary Judgment, that provision is contrary to Missouri public policy as articulated in Missouri Revised Statute section 402.838 *et seq.*, which prohibits a dealership agreement between a farm equipment dealer and a farm equipment manufacturer from being terminated except for good cause and provides the dealer to bring an action for damages sustained as a consequence of the violation of the statute. *See Order* (Doc. 106) at 8-10. Defendant merely rearticulates its arguments previously rejected by the Court. The Court sees no reason to disturb its previous ruling. Thus, Defendant's arguments on this point fail.

## 3. Status as a "Farm Equipment Dealer"

Finally, Defendant argues that as a matter of law, Plaintiff failed to prove it was a Farm Equipment Dealer for purposes the Missouri Revised Statutes.

According to the statute, a "farm equipment dealer" is "any person, partnership, corporation, association or other form of business enterprise engaged in the retail sale of farm equipment." Mo.

6

Rev. Stat. § 407.838(3). "Farm equipment" is defined in the statute as "equipment including, but not limited to, tractors, trailers, combines, tillage implements, bailers, and other equipment including attachments and repair parts thereof used in the planting, cultivating, irrigation, harvesting and marketing of agricultural products, excluding self-propelled machines designed primarily for the transportation of persons or property on a street or highway." *Id.* § 407.838(1). These definitions were included in jury instructions presented to the jury, and the jury, by virtue of their verdict, found that Plaintiff was a "farm equipment dealer."

Defendant argues that Plaintiff cannot prove it was a farm equipment dealer as a matter of law because Plaintiff presented no testimony or documentary evidence that any of the equipment was *actually* used in connection with the planting, cultivating, irrigation, harvesting, or marketing of agricultural products. During trial, Plaintiff entered testimony and exhibits showing that models of tractors sold by Plaintiff had agricultural uses and could be fitted with attachments for agricultural uses. It now argues that the jury correctly found that the tractors were of the "kind" used in agriculture.

> "The primary rule of statutory construction is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider the words used in their plain and ordinary meaning." *State ex rel. Nixon v. QuikTrip Corp.*, 133 S.W.3d 33, 37 (Mo. banc 2004). If possible, each word or phrase in a statute must be given meaning. *State v. Blocker*, 133 S.W.3d 502, 504 (Mo. banc 2004). "Related statutes are also relevant to further clarify the meaning of a statute." *Id.*

*State ex rel. BP Prods. N. Am. Inc. v. Ross*, __ S.W.3d__, 2005 WL 1274399, at *4 (Mo. 2005) (en banc). Defendant's interpretation of the "farm equipment" definition seems to turn on the actual use of the product sold by the farm equipment dealer. Thus, according to Defendant's definition, a dealership would only be covered by the statute if it sold goods of the kind contemplated in the

7

statute *and* those goods were actually used in farming. Under Defendants' theory, in proving a case for breach of the statute, a farm equipment dealer would have to put on proof that its products were actually used by farmers to plant, cultivate, irrigate, harvest, or market agricultural products. Such a requirement would effectively add another element to the prima facie case, would be unreasonable, and is not required by the plain text of the statute.

Plaintiff's interpretation, that "farm equipment" is equipment of the kind used in agriculture, is a more reasonable reading of the statute. First, the legislature decided to define "farm equipment" using categories of equipment commonly used in farming—tractors, trailers, combines, tillage implements, bailers, and other similar equipment. The categorical approach demonstrates the legislature's intent to cover those categories of equipment generally, regardless of their ultimate use. Had the legislature wished to confine the definition to equipment actually used in farming, the statute could easily have been written to include that requirement. It was not included, however, and this Court finds that actual use in farming is not a requirement.

Second, the legislature also included a categorical exclusion of certain types of products – "self-propelled machines designed primarily for the transportation of persons or property on a street or highway." The obvious example of a machine fitting this exclusion would be the farm pickup truck. The legislature recognized that some equipment might have a dual purpose—with the pickup, one can survey crops, load and unload feed for animals, transport other, smaller farm equipment, and engage in a number of agriculture-related activities, or drive to town (or across the country) on streets or highways for any purpose. Although the pickup could be used in agriculture as defined in the statute, the legislature excluded pickup trucks, as equipment used *primarily* for transporting people on roads and not producing crops or livestock and, thus, would not be "farm equipment."

8

The legislature could have similarly limited the statute not to apply to low-horsepower tractors that could be used in agriculture but are primarily used in industrial, commercial, or personal applications. But such an exclusion is not in the statute. It would be contrary to the plain meaning of the definitions and contrary to the legislature's intent to read in such an exclusion.

Plaintiff presented evidence that the products it sold included (1) tractors (2) that could be used for planting, cultivation, harvesting, or marketing of agricultural products. The jury chose to believe that evidence, and, by virtue of the verdict, found Plaintiff to be a "farm equipment dealer." Evidence supports the jury's verdict, and the statute, as a matter of law, does not compel the opposite result. Defendant's motion for judgment as a matter of law is denied.

## II. Motion for New Trial

### A. Standard

Defendant also requests a new trial pursuant to Federal Rule of Civil Procedure 59. A new trial should be granted to avoid a manifest miscarriage of justice. *See Belk v. City of Eldon*, 228 F.3d 872, 878 (8th Cir. 2000). Excessive jury verdicts, verdicts against the weight of the evidence, and manifest legal errors during the trial can be grounds for a new trial can be bases for a grant of new trial. *See Gray v. Bicknell*, 86 F.3d 1472, 1480 (8th Cir. 1996). The decision to grant a new trial is "almost entirely" within the discretion of the trial court. *Dehne v. Medicine Shoppe Int'l, Inc.*, 261 F. Supp. 2d 1142, 1144 (E.D. Mo. 2003). However, the Court must adequately articulate any reasons for overturning the jury's verdict. *Van Steenburgh v. Rival Co.*, 171 F.3d 1155, 1160 (8th Cir. 1999). In reviewing the motion, the Court is free to review the evidence for itself, *Dehne*, 261 F. Supp. 2d at 1144, but it "may not usurp the role of the jury by granting a new trial simply because it believes other inferences and conclusions are more reasonable." *Van Steenburgh*, 171 F.3d at

1160.

*B. Analysis*

<u>1. Verdict Product of Passion or Prejudice</u>

First, Defendant argues that the $1.4 million verdict was "clearly" against the weight of the evidence, and was the product of the jury's passion and prejudice. Excessive damage awards due to the jury's passion and prejudice generally require a new trial, rather than just a trial on damages or remittitur, as the jury could have been prejudiced as to a decision on liability as well. *See, e.g.*, *Dossett v. First State Bank*, 399 F.3d 940, 947 (8th Cir. 2005). However, as explained in this Order, Plaintiff did present sufficient evidence of lost profits, which the jury decided to believe. Although the amount was excessive, the Court finds that the error was not a result of the jury's passion and prejudice toward Defendant. Further, there was little evidence at trial that Defendant's termination of the Commercial Products Dealership Agreement was in compliance with the Missouri statute. Thus, the usual concern that an overly generous award is indicative of passion and prejudice that may have tainted the liability finding is not present in this case. *See, e.g.*, *Parsons v. First Investors Corp.*, 122 F.3d 525, 529 (8th Cir. 1997) (citing cases and noting the circumstances when a passion and prejudice finding would not require a new trial, such as when the trial was bifurcated, the trials was complex or lengthy, or where a miscalculation occurred due to an improper closing argument). Although, as explained below, Defendant is entitled to remittitur, it is not entitled to a new trial as a result of the excessive jury award.

<u>2. Admission of Evidence of Defendant's Alleged Failure to Find a Buyer</u>

Defendant next argues that Plaintiff's evidence that Defendant failed to find a buyer for Plaintiff's business was not relevant, that the introduction of the evidence was unfairly prejudicial,

and that such prejudice warrants a new trial. The Court previously denied Defendant's Motion *in limine* to exclude this evidence, "subject to relevance at trial." The evidence was admitted at trial. Although Defendant's failure to find a buyer for Plaintiff's business was not plead as an allegation in Plaintiff's complaint, it was nonetheless related to the termination of the agreements and part of the course of dealing between the two parties. Even if the evidence was not relevant, there is no indication from anything in the record that said evidence unfairly prejudiced the jury. The motion will be denied on this basis.

### 3. Admission of Defendant's Expert Testimony

Next, Defendant argues that it is entitled to a new trial because the Court prohibited Defendant's expert, a certified public accountant, from testifying that Plaintiff had not incurred any lost profits with the termination of the Deere agreements. The Court ruled, prior to trial, that the recent Missouri Supreme Court case of *Ameristar Jet Charter, Inc. v. Dodson Int'l Parts Inc.*, applied to this case, and "fixed expenses" would not need to be deducted from lost revenues when calculating lost profits. Defendants then advised the Court that its expert had not separated out variable and fixed expenses from her damages calculation and would be unable to do so. Defendant then chose not to call the expert for any other form of testimony; the Court did not categorically exclude Defendant's expert, but merely limited her testimony to conform to this Court's interpretation of Missouri law. In its reply suggestions, Defendant argues that the holding in *Ameristar* should be limited to tort cases and not applied to this case, which is essentially a breach of contract action. However, the Court has previously ruled that, at least in this case, such a distinction was not contemplated by the *Ameristar* court, and this Court sees no reason to reverse its previous ruling. Defendant is not entitled to a new trial on this ground.

11

### 4. Plaintiff's Use of the Deposition of Gene Baker and
### Letters from Defendant to Springdale Tractor

Defendant argues that the admission of excerpts from the deposition of Gene Baker and of letters from Defendant to Springdale Tractor was error warranting a new trial.  The deposition testimony of Gene Baker indicated that Defendant may have offered other Deere dealerships better sales incentives to allow Deere dealerships to lower prices as against other dealerships.  Plaintiff offered this evidence to demonstrate that Defendant was using these incentives to undercut the sales of smaller dealers as a method to consolidate dealerships into larger operations.  The evidence offered by Plaintiff was from agricultural dealers not in the same sales region as Plaintiff.  Defendant's corporate representative testified that incentives were offered differently in the agricultural and commercial products lines.  However, the evidence was relevant to demonstrate that Defendant did engage in such incentive programs.  Even if the different circumstances between the Springdale Tractor and Baker evidence and Plaintiff's situation eroded the relevance of the evidence, its admission was not so unfairly prejudicial to require that a new trial be ordered.

### 5. Withdrawal Instruction Concerning Plaintiff's Exhibit 22

Defendant next argues that it is entitled to a new trial because the Court declined to give its proposed withdrawal instructions regarding Plaintiff's Exhibit 22 referencing increases in Kubota sales.  The exhibit was admitted, and Defendant did not object to its admission at that time.  On cross examination of Plaintiff's witness, however, Defendant demonstrated that Exhibit 22 contained sales of all Kubota equipment, and not just tractor sales comparable to the products sold under the Deere Commercial Products Dealer Agreement. Defendant requested that both the evidence and the exhibit be withdrawn and that withdrawal instructions be given.  The Court refused to give the instruction, holding that the testimony regarding Kubota sales had been thoroughly impeached

12

during cross-examination and giving a withdrawal instruction on an exhibit would place undue emphasis on why the exhibit was being withdrawn at this time. Instead, the Court ruled that the exhibit would not be sent back to the jury if requested and that counsel would refrain from referring to the exhibit during closing arguments.

If the jury improperly used the calculations presented in Exhibit 22 as a basis for establishing future lost profits, then such miscalculation may be corrected through remittitur rather than through a grant of a new trial. To the extent that Defendant argues that the refusal to give the withdrawal instructions unfairly prejudiced the jury, that argument is overruled. The Court's decision not to give the withdrawal instruction was made in an attempt to avoid undue influence of Exhibit 22; a withdrawal instruction would likely have been *more* prejudicial to Defendant. Defendant's request for a new trial on this ground is denied.

### 6. Plaintiff's Counsel's Reference to the "Anderson Family" in Closing Argument

Defendant next argues that Plaintiff's counsel's argument that the jury award damages to provide for the "Anderson family" was improper, as the Plaintiff in the case was the corporation Anderson Car & Tractor, not the Anderson family themselves. Plaintiff argues that Defendant did not object to the characterization, and that such characterization was not plain error.

During closing argument, Plaintiff's counsel argued that the Anderson family "can't have what John Deere agreed to give them, and that was a future for their family for this dealership." Defendant's counsel objected arguing that it was "improper for [Plaintiff's counsel] to talk about other claims and damages that aren't in the instructions..." The objection was overruled. Such objection is not directly related to the possible characterization of Plaintiffs as individuals, but rather to the scope of the claims in the jury instructions. Plaintiff's counsel did not specifically categorize

the Plaintiffs as individuals nor specifically ask for individual relief in closing. The argument merely related possible future lost profits to "level [the] playing field" for the dealership, which was owned and run by the family. Defendant's argument is without merit.

### 7. Jury Instructions

Defendant next argues that two jury instructions—number 14 and number 12—were improper, which, it argues, did not allow the jury to understand issues before it and failed to include all the required elements of Plaintiff's claim.

In reviewing jury instructions, appellate courts ask

> "whether the instructions, taken as a whole and viewed in light of the evidence and applicable law, fairly and adequately submitted the issues in the case to the jury." *Jones v. Swanson*, 341 F.3d 723, 734 (8th Cir.2003). As "long as the jury is correctly instructed on the substantive issues in the case," we commit to the sound discretion of the district court the actual "form and language of jury instructions." *Id.* We "will reverse on the basis of instructional error only if [we conclude] the error affected the substantial rights of the parties." *Id.*

*Throneberry v. McGehee Desha County Hosp.*, 403 F.3d 972, 977 (8th Cir. 2005).

First, Defendant argues that Jury Instruction No. 14 was improper. Jury Instruction No. 14, which was based off of the definition of "good cause" in Missouri Revised Statute section 407.840, and objected to by Defendant, stated:

> The term "good cause" as used in these instructions means failure by Anderson Car & Tractor to substantially comply with essential and reasonable requirements imposed upon Anderson Car & Tractor by the dealership agreement if such requirements are not different from those requirements imposed on other similarly situated dealers either by their terms or in the manner of their enforcement. In addition, good cause shall exist whenever Anderson Car & Tractor has consistently failed to meet John Deere's requirements for reasonable market penetration based on John Deere's experience in other comparable marketing areas.

The first sentence of the instruction comes from the first paragraph of section 407.840. In

14

the statute, the legislature then enumerated eight additional situations in which good cause exists. The eighth factor in the statute, listed in a separate paragraph, was included as the last sentence of Instruction No. 14. Defendant argues that the instruction is confusing because it fails to clearly instruct the jury that its verdict would be for Plaintiff only if neither ground was present.

Defendant's argument fails. First, the language tracks the language of the statute nearly identically. It includes the "in addition" language that introduces the eight conditions in the statute. Given its plain meaning, the phrase "in addition" means a circumstance of good cause that is in addition to the previously described circumstances of good cause. Such language clearly communicates to the jury that good cause would exist when Plaintiff failed to substantially comply or whenever Plaintiff failed to meet Defendant's requirements for reasonable market penetration. Putting the second sentence in a separate paragraph would not have modified or clarified the instruction to any substantive degree. Therefore, Instruction No. 14 was proper.

Next, Defendant argues that the verdict director, Instruction No. 12, was improper, because it failed to include all the required elements of Plaintiff's claim. Instruction No. 12, which was also objected to by Defendant during trial, reads:

> Your verdict must be for Plaintiff on its claim if you believe:
> First, Plaintiff was engaged in the retail sale of farm equipment for Defendant pursuant to the Commercial Products Agreement, and
> Second, Defendant terminated the agreement without good cause, and
> Third, Plaintiff was thereby damaged.

Defendant argues that because section 407.840 provides that "good cause" exists when a dealer fails to substantially comply with essential and reasonable requirements imposed upon the dealer by the agreement, that Plaintiff had the burden of proving substantial compliance, and such burden must be included in the verdict directing instruction.

15

The verdict director required Plaintiff to prove that Defendant terminated the agreement "without good cause." As shown above, the jury was instructed as to the definition of "good cause" in Instruction No. 14. Thus, reading the two instructions together, the jury was instructed that the Plaintiff had to prove that the agreement was terminated without good cause, including a showing that it substantially complied. The jury was instructed properly. To include the burden to prove substantial compliance once again in the verdict director would have been unnecessarily, duplicative and would have overemphasized such a requirement. The instructions do not warrant a new trial.

### 8. Admission of Mortality Table

Defendant argues that the introduction of Exhibit 44, the mortality table calculating the life expectancy of Plaintiff's President, Don Anderson, should not have been admitted because it was irrelevant and prejudicial. Defendant argues that there was no basis to use the remaining life expectancy of the president as a yardstick for the calculation of lost profits, particularly because it is impossible to believe that Mr. Anderson would have worked to his dying day. However, the Commercial Products Agreement stated that the contract could be terminated at any time after the death of an *individual proprietor, partner, major shareholder, or the manager of the dealership*, without prior consent. Plaintiff is a corporation owned and run by the Anderson family. To the extent that the jury chose to award lost profits, it was reasonable to assume that the contract would have continued until its natural conclusion — one conclusion of which would have been the death of Mr. Anderson. Defendant, in reply, states that there are many methods to calculate lost profits, which do not include gross profits over life of the owner. However, because the date of death of the owner was a relevant termination point in the contract, and because the mortality table would demonstrate the life expectancy of Mr. Anderson, Exhibit 44 was at least minimally probative on

16

the issue of damages and properly admitted.

### 9. Damages Resulting From Defendant's Failure to Pick up Parts Following Termination

Finally, Defendant argues that it is entitled to a new trial because the Court improperly admitted evidence that Defendant failed to pay for parts it picked up following termination of the Dealer Agreement, failed to pick up all parts, and imposed a $3000 shipping fee for returned parts. Defendant argues that such claims were not pled in Plaintiff's complaint, were not a part of the claimed violation of the Missouri Farm Equipment Statute, therefore were improperly before the jury and resulted in an improper verdict warranting a new trial. Plaintiffs provided these facts in Rule 26 damage disclosures. They were noticed by Plaintiff as damages that occurred following Defendant's termination of the dealership. Thus, although not specifically pled in Plaintiff's complaint, Defendant had notice of the damages calculation. Additionally, these damages were incurred because of Defendant's choice to terminate the contract. Therefore, they were "sustained by the dealer as a consequence of the manufacturer's violation." Mo. Rev. Stat. § 407.848. The evidence was proper, and Defendant is not entitled to a new trial.

## III. Remittitur

Additionally, Defendant argues that it is entitled to remittitur of the verdict. Defendant argues that the verdict should be remitted to a verdict of $1 in nominal damages. Although Court finds that remittitur is appropriate, for the reasons in this Order, it remits the jury's verdict to $356,100.

### A. Standard

"'[A] district court should grant remittitur only when the verdict is so grossly excessive as to shock the court's conscience.'" *Norton v. Caremark, Inc.*, 20 F.3d 330, 340 (8th Cir. 1994)

(quoting *Am. Business Interiors, Inc. v. Haworth, Inc.*, 798 F.2d 1135, 1146 (8th Cir. 1986));
*Ouachita Nat'l Bank v. Tosco Corp.*, 716 F.2d 485, 488 (8th Cir. 1983) (en banc). The verdict is
not excessive unless there is "plain injustice" or a "monstrous" or "shocking" result. *Eich v. Bd. of
Regents for Central Mo. State Univ.*, 350 F.3d 752, 763 (8th Cir. 2003). Remittitur, rather than a
judgment notwithstanding the verdict, is appropriate when the jury awards damages in excess of the
amount proved, but evidence was presented from which a jury could have arrived at a damages
award. *In re Knickerbocker*, 827 F.2d 281, 289 & n.6 (8th Cir. 1987); *see also Stogsdill v.
Healthmark Partners, L.L.C.*, 377 F.3d 827, 834 (8th Cir. 2004) (conditionally remitting punitive
damages claim because it was excessive to the amount proved).

The decision to grant or deny remittitur, even in a diversity action, is a procedural matter
governed by federal and not state law. *Parsons v. First Investors Corp.*, 122 F.3d 535, 528 (8th Cir.
1997) (quoting *In re Knickerbocker*, 827 F.2d at 289 n.6). Because the use of remittitur is
circumscribed by the Seventh Amendment, usually a remittitur order may only be entered on
condition that Plaintiff voluntarily accepts a remitted jury award in lieu of a new trial. *Thorne v.
Welk Investment, Inc.*, 197 F.3d 1205, 1210 (8th Cir. 1999). However, there may be "exceptional
circumstances" in which remittitur may be ordered unconditionally. *Id.* (citing *Parsons*, 122 F.3d
at 529). Included in those circumstances are cases where a damages award is miscalculated because
of an improper closing argument, *see Parsons*, 122 F.3d at 529 (citing *Ouachita Nat'l Bank*, 716
F.2d at 488), and where the actual damages assessed by a claim were in amounts exceeding the proof
provided, *see Ogilvie v. Fotomat Corp.*, 641 F.2d 581, 586 & n.13 (8th Cir. 1981).

Part of this evidence was contained in the reports discussed by Defendant's corporate
representative, Bill Frank, in his testimony concerning Plaintiff's Exhibits 41 and 48. Plaintiff's

bookkeeper, Patricia Anderson, prepared Exhibit 20 to reflect the John Deere sales and cost of sales for 1998. She said she selected 1998 because it was the only year they had enough product to sell. Exhibit 20 reflected total sales of $150,751 for that year. Mr. Frank testified in regard to Exhibit 41 that the previous 12 months' sales report (in this case, March 1999 to March 2000) had been $138,294 and, he further stated, there had been no sales in 2000. This certainly could indicate to the jury that there had been sales of $138,294 during the nine month period from March, 1999, to December, 1999. Such a figure would annualize out to over $150,000 for a twelve month period. John Deere presented other sales figures that were less that those presented by Plaintiff. The jury, however, has the right to pick and choose what they believe and disbelieve in the evidence Therefore, it could have chosen to believe that Plaintiff's 1998 retail sales totaled at or over $150,000.

In regard to profit margins, Plaintiff presented evidence that it could make at least 9% profit. Exhibit 20 reflected a 9% profit margin. Defendant's evidence indicated that it expected its dealers to make 10% – 12% profit. There was other evidence that Plaintiff felt it could grow the business as shown by the growth of Kubota sales.

The Court does not have a crystal ball. However, it is clear that this jury believed that Plaintiff would have had a profitable future selling John Deere products if the contract had not been wrongfully terminated. Giving some consideration to this strong finding by the jury, the Court believes it is reasonable to consider that a profit margin of 12% on sales of $150,000 per year for the 19.2 years of life expectancy of Don Anderson is sufficiently supported by the evidence.

In addition to lost sales, Plaintiff's damages would include the losses related to the uncompensated return of parts and equipment after the contract termination. Plaintiff presented

evidence that some parts were shipped back to John Deere, for which John Deere agreed to pay $6,000, but deducted $3,000 for cost of shipping to Kansas City. Mike Anderson also testified that Defendant refused to take back new parts for which Plaintiff had paid $7,500 and other parts for which Plaintiff paid between $3,000 and $5,000. The Court believes that $10,500 is a fair amount for this item of damage.

In summary, it appears that the evidence is sufficient to support an award of $345,600 ($150,000 x $ 12% x 19.2 years) for future lost profits and $10,500 ($7,500 + $3,000) for losses on parts. Therefore, the Court finds that a remittitur of the jury award from $1,400,000 to $356,100 is appropriate.

## IV. Conclusion

Accordingly, it is hereby

ORDERED that Defendant's Renewed Motion for Judgment as a Matter of Law Pursuant to 50(b), or, in the Alternative, Motion for Remittitur and Motion for new Trial, Pursuant to Rule 59 (Doc. 163) is **GRANTED IN PART AND DENIED IN PART.** Defendant's Motion for Judgment as a Matter of Law and Defendant's Motion for New Trial is **DENIED.** Defendant's Motion for Remittitur is **GRANTED.** The jury verdict is hereby **REMITTED** to $356,100.

**IT IS SO ORDERED.**

DATE:         July 25, 2005          _/s/ Richard E. Dorr_____
                                      RICHARD E. DORR, JUDGE
                                      UNITED STATES DISTRICT COURT

20