NICK MYERS, CPA, P.C.
608 S. Pearl Avenue
Joplin, Missouri 64801

RE:     TRI-STATE v. JOHN DEERE

1.      **Qualifications:**

Nick Myers is a certified public accountant and licensed by the State of Missouri; CPA certification MO 8504.  He has offices in Joplin, Missouri, and Anderson, Missouri with his primary focus on providing certified public accounting services for the general public, individuals and small businesses.  He has experience through his education and employment in projecting lost profits for a business like Tri-State, which was well established and had a long history of sales.  He has experience valuing small businesses and has attended the Institute of Business Appraisers Valuing Mid-Size and Smaller Businesses in 1996. He is active in both state and national accounting organizations.  He was a member of AICPA Council from 1999 through 2001 and 2006 through present.  He has served as the MSCPA Chairman of the Board of Directors and on the professional ethics and the Education Foundation and Legislation committees.  He keeps current with continuing education.

2.      **Publications in the last 10 years**:

   2006 – Joplin Business Journal – Current Develop. in Accounting
   September    2006;
   2000 and 2001 – The Asset MO Society of CPA's  - 10 monthly columns on Professional issues in MO.

3. **Depositions in last 4 years**.

   None

4. **Trials in the last 4 years**.

   None.

5. **Compensation to be paid for study and testimony**:

   Witness charges $205.00 per hour for review of documents and issuance of report and $250.00 per hour for testimony with a 2 hour minimum.

6. **Data considered in forming opinions**:

   The following documents were reviewed in the determination of the opinions listed herein.

   a. The tax records for Tri-State Hdwe. for the years 2001, 2002, 2003, 2004 and 2005.

   b. Summary of insurance benefits Tri-State paid for Charles and Judy Wolfe.

   c. National Vital Statistics Reports, Life Tables.

   d. January 9, 2005 Joplin Globe newspaper article regarding the history of Tri-State Hardware.

   e. Depositions of Charles and Judy Wolfe.

   f. John Deere Agricultural Dealer Agreement paragraph 5.

7. **Exhibits**:

   Please see documents as discussed in paragraph 6 which were already provided in the previous report.

8.  **Opinions**:

These opinions apply to Tri-State's claims for lost profits which are contained in Count I of Tri-State's Petition for Wrongful Termination and in Count II of its Petition for Breach of Contract.

In the calculation of lost profits, first it is necessary to look at the business in question. According to the testimony of Charles and Judy Wolfe, Charles Wolfe's father became a John Deere dealership in 1944. The Southwest City dealership was then taken over by Charles Wolfe after the death of his father in 1964. Based on the long history of profitable sales of this well established and well known business, expected future profits were extrapolated from historical evidence of the income and expenses of the business prior to the cancellation of the dealership.

John Deere issued its first formal complaint regarding the volume of sales beginning in 2001 which continued until termination in mid 2005. In order to extrapolate the income and expenses of the business, I used the last four full year's tax returns, 2001-2004, which was the period of time complained of by John Deere.

Based on tax records for the year 2001, I took the gross sales figure of $2,389,414 and subtracted the cost of goods, $2,121,706 to come up with a gross profit figure of $267,708. The gross profit is added to other income which totaled $71,477 for a total income of $339,185.

Next, total deductions were calculated by adding the compensation paid to Charles and Judy Wolfe in the amount of $33,691; depreciation in the amount of $4,460; the amount paid for the employee benefits program which totaled, $10,594; and other deductions which totaled $259,372. After adding these deductions together, total deductions equaled the amount of $308,117.

Total deductions are then subtracted from the total income which resulted in ordinary income in the amount of $31,068 for the year 2001.

Based on the tax records for the year 2002, I took the gross sales figure of $2,153,558 and subtracted the cost of goods, $1,958,063 to come up with a gross profit of $195,495. The gross profit is added to other income which totaled $124,547 for a total income of 320,042.

Next, total deductions are calculated by adding the compensation paid to Charles and Judy Wolfe which totaled $33,541; depreciation of $11,852; the amount paid for the employee benefits program which totaled $12,528; and other deductions totaling $239,439. After adding these deductions together, total deductions equal the amount of $297,360.

The total deductions are then subtracted from the total income which gives ordinary income in the amount of $22,682 for the year 2002.

Based on the tax records for the year 2003, I took the gross sales figure of $1,632,583 and subtracted the cost of goods, $1,417,641 to come up with a gross profit of $214,942. The gross profit is added to other income which totaled $70,696 for a total income of $285,638.

Next, total deductions are calculated by adding the compensation paid to Charles and Judy Wolfe which totaled $36,531; depreciation of $7,133; the amount paid for the employee benefits program which totaled $8,268; and other deductions totaling $217,032. After adding these deductions together, total deductions equal the amount of $268,964.

The total deductions were then subtracted from the total income which gives ordinary income in the amount of $16,674 for the year 2003.

Based on the tax records for the year 2004, I took the gross sales figure of $2,043,270 and subtracted the cost of goods $1,794,537, to come up with a gross profit of $248,733. The gross profit is added to other income which totaled $82,222 for a total income of $330,955.

Next the total deductions were calculated by adding the compensation paid to Charles and Judy Wolfe which totaled $42,570; depreciation of $4,529; the amount paid for the employee benefits program which totaled, $11,121 and other deductions totaling $252,180. After adding these deductions together, total deductions equal the amount of $310,400.

The total deductions were then subtracted from the total income which gives ordinary income in the amount of $20,555 for the year 2004.

After calculating the individual years from 2001 though 2004, next I totaled the sums for each category for the years 2001-2004. For the years 2001-2004, the total gross sales equaled $8,218,825 and the cost of goods totaled $7,291,947 leaving a gross profit of $926,878. Added to the total gross profit was other

income of $348,942 which equals total income in the amount of 1,275,820 for the years 2001-2004.

The total deductions for 2001-2004 were then calculated by adding the compensation paid to Charles and Judy Wolfe which totaled $146,333; depreciation in the amount of $27,974; the amount paid for the employee benefits program which totaled $42,511; and other deductions in the amount $968,023. After adding these deductions together, the total deductions equal $1,184,841.

These total deductions are then subtracted from the total income which gives ordinary income in the amount of $90,979 for the years 2001- 2004 combined.

After combining the totals for 2001-2004 each calculation is divided by the number of years to reach an average for each category. The average gross sales for 2001-2004 equals $2,054,706; the average cost of goods totaled $1,822,987; and the average gross profit totaled $231,720. When adding the average of other income which totaled $87,236, the average total income for the years 2001-2004 is $318,955.

Next the average deductions are calculated by taking figuring the average compensation paid to Charles and Judy Wolfe which totaled $36,583; the average depreciation of $6,994; the average amount of the employee benefits program which totaled $10,628; and the average of other deductions which totaled $242,006. These deductions are then total and the average amount of total deductions is $296,210.

The average total deduction is then subtracted from the average gross profit which gives an average ordinary income in the amount of $22,745. Therefore, the first figure in the calculation of damages is the loss on average of $22,745 per year.

The second figure in the calculation of damages is the amount of compensation that Charles and Judy Wolfe have lost each year. As already discussed above, that average figure is $36,583.

The third figure in the calculation of damages is to figure the value of benefits lost by Charles and Judy Wolfe after the termination of the dealership. According to Charles and Judy Wolfe, Tri-State paid yearly health benefits on behalf of both Charles and Judy Wolfe. Tri State paid $269.37 a month for health insurance for Judy which totals $3,232.44 a year. Tri-State paid health insurance for Charles Wolfe in the amount of $169.67 a month which totals $2,036.04 a year. Tri-State paid for life insurance on Charles in the amount of $47.22 a quarter, which totals $188.88 a year. Tri-State also paid for a warranty guarantee policy on Charles Wolfe in the amount of $529.29 per year. Charles and Judy Wolfe therefore lost additional benefits in the amount of $5,987 per year as a result of the termination of this dealership.

To determine the total losses as a result of the termination of this dealership, the average annual income of the business, $22,745, is added to the average compensation paid to Charles and Judy Wolfe, $36,583. This amount is then added to the amount of yearly benefits paid on behalf of Charles and Judy

Wolfe, $5,987. After totaling these figures, the average annual benefits for the business were $65,315 per year.

After determination of the loss of average annual benefits for the business, next it is necessary to determine the duration of the loss. One provision of the dealership agreement addresses the issue of death and not having a successor as a method of ending the contract. As Tri-State had been an ongoing business for over 40 years, and death is the only contract provision which is guaranteed to happen, it is necessary to look at life expectancy tables.

Based on the National Vital Statistics Volume 53 #6 Life Table, Charles Wolfe had a remaining life expectancy of 11.40 years. The loss of $65,315 per year for 11.40 years equals a loss of $744,587. Judy Wolfe had a remaining life expectancy of 18.70. As 11.40 years of Judy's life expectancy overlaps with that of Charles, it is only necessary to calculate the loss for the remaining 7.3 years. Judy's 7.3 years of life expectancy beyond that of Charles, equals and additional $476,797 in loses which brings the total loses to $1,221,384.

It is also important to note that these opinions are based upon very conservative calculations in that they take into account only the 4 alleged low sales years of 2001-2004 as identified by John Deere. Further, these calculations do not take into account the potential sales had Tri-State been supplied with an adequate stock of merchandise as alleged by Charles and Judy Wolfe, nor do they take into account any potential growth.

Therefore, it is my opinion, based upon accepted standards and practices within the industry, that as a result of the termination of plaintiffs' well established and long standing dealership, the plaintiffs have lost future profits and benefits annually in the amount of $65,315 as determined by the extrapolation of historical evidence of income and expenses. Further, when based upon the life expectancy of Charles and Judy Wolfe, these damages total $744,587 and $1,221,384 respectively. Further, all opinions contained herein are all to a reasonable degree of certainty within my field of expertise.

Dated 12/11/07

/s/ Nick Myers
NICK MYERS, CPA